and we may take a brief recess after this case. Good morning, Your Honors. Kyle Waldner on behalf of the appellant. I'd like to reserve four minutes. Granted. Thank you. This case presents an issue that, to my surprise, has not been resolved by any court in this jurisdiction, and that's the constitutionality of the territory's telephone harassment statute. The statute dates to 1968. This is never raised below the court. I believe that everything that I argue today and that's in the briefing relates to the ability of this court to exercise its discretion to correct a plain error. This is an error that's plainly obvious. Are you saying that every time a court has before it a case involving a statute, the court has to, on its own, decide whether that statute is constitutional without the parties ever saying anything about that? And it's plain error if a court doesn't do that? Certainly not, Your Honor. Well, that's what you're saying. I wouldn't sweep so broadly. In this situation, and what I will argue in what the briefing has pointed out, I believe, is that each time that this statute, the particular language of this harassment statute has been decided by courts in other jurisdictions, state supreme courts, it has been stricken. But there's, no, there's cases going both ways here, are there not? The cases, I believe, that go the other way, there are elements of those statutes that save the statute, that narrows the scope. This isn't so clear that, you know, a district court looks at it and goes, whoa, that is just, you know, absolutely unconstitutional. I mean, if there are cases going both sides, how come both ways, and granted there might be distinctions, how are we, how can we possibly say it's plain error? Well, let me, let me turn to you. I mean, it could be on habeas, your ineffectiveness is bolstered by the fact that counsel never raised this argument. I mean, that I would grant you, and you'd probably have an interesting habeas claim, as I'm sure we will get to. But all right, I don't want to argue with you, so proceed with your argument. Well, it leads me into, I guess, addressing the case law that's cited by the appellate division. Of course, this is a, this case has a strange procedural posture. It originated in Superior Court, appealed to the appellate division of the Virgin Islands, the district court, when that court had appellate jurisdiction, so pre-Supreme Court. In rejecting appellant's this, and another case, U.S. v. Langley, as to the vagueness, vagueness challenge, but those cases deal with the federal statute, and the federal statute involves, involves language that, that frankly would drastically narrow the statute here if it, if it were included in the VI territorial statute. The, that, that statute, of course, includes, the federal statute, that is, criminalizes the making of a call. In, in this case, the defendant doesn't even have to initiate the call. The recipient of a call could, could potentially have criminal liability attached if that, the recipient says something to the caller, who could be a phone harasser or some, or a, a direct dialer or something, that, that she intends to call the police if she receives any more calls. That is an important distinction. Another distinction is that the federal statute uses the word threaten, and this, this would be in contrast to the, the language that, again, a number of other courts in, in, in other states have, have found to be inherently, inherently vague. The word alarm, the word harass. The Colorado Supreme Court defined the, cited to the Merriam-Webster definition of alarm as aroused to the sense of danger. And Merriam-Webster's also defines harass as to annoy or bother someone in a constant or repeated way. These, these appellant would submit are very low level, low level emotional states that, that are... Is there a Third Circuit opinion directly on point here? No, Your Honor. The Third Circuit opinion that is relied upon by the appellate division was the Langley opinion, I believe, and that, that has to do with, that, that, that construes the federal statute. You're getting... And that would, but that would say that the vagueness shouldn't apply here because there's an intent element, correct? That's what that case says, Your Honor. But doesn't Langley stand the position that there is no clear violation here so that with our hands tied, having to apply a plain error review, there's no way to come to the conclusion that you want us to come to? Well, I, I would again refer back to the distinctions between the statutes. The federal statute, again, requires, it includes threatening, threatening language. A true threat, of course, has been found by the Supreme Court to, to have no constitutional protection. The, the federal statute also requires that the, the call be anonymous. And that's a, that's a huge distinction. Other courts have talked about... The Supreme Court was asking about the standard of review. The standard review, well, my argument though is that the, the sheer breadth of the statute here, I think, makes the error perhaps more obvious or clear to a jurist or... Judge Rendell said earlier that courts are going both ways. So how could it be so clear when different jurisdictions have addressed the same problem differently? And I guess I'm not making my argument clear enough. I, the, the jurisdictions that have found these telephone harassment statutes upheld them, have upheld them because they, they include elements that, that are simply not, not present here. The, the statute would be more clear. What is your chief complaint about this statute? Why, why is this, I guess your chief complaint is that this is overbroad. It's, I think overbreadth is probably the strongest... It goes too far. It goes way too far. It's, and I think perhaps it could... Had that challenge were made, it might succeed. But that doesn't mean that a court's failure to sua sponte, declare it overbroad, is plain error. I think that the, just the, the sweep of the statute makes the error plain and, and obvious. The... As I said earlier... It wasn't argued in the district court that we have really no record to, to look at as to why the district court would find the sweep of the statute too extensive. True. That it would bring in people that could be innocent. Correct. And, and what I would, what I would kind of boil this down to though is that the, the statute is from 1968. And I think that we're dealing with an antiquated statute for, for today's times. I think that the, the statute, for example, actually defines sending telegrams with the attempt to alarm in a manner likely to alarm. That would be something that would give rise to criminal liability. Could you shift your gears a little bit towards the closing argument of counsel? I will. That would... In case we're not inclined to find plain error. Sure. I, I think this is another huge basis for, for this court to find plain error and exercise its discretion. This, this again... I, I, in other words, we should find plain error because counsel was so bad, so bad in representing his client that he never would have raised this issue with the district court in the first instance or the territorial court. Territorial court. That's, that's actually, I would agree with that statement. It's not really the crux of my... I thank your argument. No, it's, it's the, I think the, my concern with counsel's performance goes, goes much deeper. Don't we need an evidentiary hearing really to find out why counsel was doing what he was doing? I think in this case there's absolutely no, there, there is nothing that, that suggests that there's any sort of strategy here. This is not... How can you, how can you make that argument when we've got Lampley, when we've got a close call, when we've got cases going each way? I mean, earnestly, how do you make that argument? I'm actually, what I'm referring to now is counsel's complete concession of his, his client's guilt in closing argument. But he, at the end, maybe he's trying to save face with the court. I mean, all these faxes, all these things of the testimony of the woman, how, how oppressed she was with all this stuff. But, you know, he was arguing actually for leniency and saying, okay, leniency, and in point of fact, the court was extremely lenient, gave a totally suspended sentence here. So didn't he succeed as compared to, to argument to the court, you know, all this isn't so bad? I'm not sure that the, the, what, what this gentleman was convicted of rises to the level to, to even the worst situation to, to detain him or, or incarcerate him for six months. I mean, I think this is where you have to look at the, the total scope of the trial and the total scope of the performance. In Florida, Florida versus Nixon, defense counsel said to the jury, my client is guilty, which is what, what happened in this case. But in that case, it was a trial strategy. And why did, so why doesn't Florida versus Nixon apply here? It's not, it's not even close, in my opinion. You have to look at the, the entire, the, the performance during the entire trial. During, during his direct examination of his client, he makes his client promise not to commit any more crimes. He, he, he literally cross-examines the, the, the, his client for, he does a much better job than the prosecutor. I'll, I'll tell you that. And he, it's obvious he didn't prepare his client for trial. The, the client is under oath saying, I didn't know it was going to be like this today. I would have provided you with the information that I need to defend myself. His client makes the, Mr. Vancepool makes out the defense. But we don't have anything on the record as to why counsel did this. And isn't that why we routinely do not decide these on direct appeal and we let them go to habeas? Isn't that what should happen here? No, no, Your Honor. I, I would, I would concede that that is what routinely happens. This, this is an outlier case. This is a, a U.S. v. Swanson case that the, that the Ninth Circuit decided. Are you familiar with Chronic? Chronic? This is Chronic. Well, this is Chronic. But Chronic is, Chronic, Chronic. Chronic problem. Chronic, Chronic though, kind of outlined the rule, but it, it, it, it didn't find that there was a chronic violation in that case. The Swanson case actually does apply it to, to facts and finds that, that chronic applies there. And, and that there was this, this total, total abdication that, that, yeah, there was just no meaningful, full testing of the government's case. And that's really what you, what you have here when you have, you know, he, he, in the closing argument, I guess, I'm not sure you can interpret it as lenience, a plea for leniency. He's, during the course of the trial, put his client in a worse position than the prosecutor ever did. And, and he calls his client crazy in the, in the closing. He says that he's fantasizing. Well, but that could be, you know, another way of saying he didn't have any real intent to annoy or harass, which is necessary. He was fantasizing. Well, there was no, there was no notice of any insanity defense. That, that was not the, the thrust of any of, again, my, my larger point, I guess, is that there's no strategy that can be divine from this record. No matter how hard you try, it's, it is simply, it is a total abdication by, by defense counsel. And I, I see that my time is up. I, I can. Judge Greenaway, did you have any further questions? I have many, but none that I'll put to him. Thank you. All right. Thank you. We'll hear from you on rebuttal. Good morning, your honors. It's still morning, barely. May it please the court. I'm Kimberly Salisbury here on behalf of the government of the Virgin Islands. You all did such a great job of making my case. I'm not sure if there's anything left for me to say, however. The defense attorney. But the defense counsel here totally abdicated. He was, he was acting like a prosecutor in questioning his client. What possible reason could there be for that? Your honor, I believe that makes the case for a collateral review. We don't know what was going on at the trial level. I wasn't there. Appellant's counsel wasn't there. We don't know anything about Mr. Vanderpool. We don't know how delusional he was during the trial. All we know is that the judge weighed the credibility of the witnesses and found in favor of Ms. Webster. It was very clear Mr. Vanderpool wanted to present a defense. He took the stand and he gave a number of explanations why these phone calls took place. But his lawyer seemed to insist that he was guilty. Well, I will grant you that there is an appearance of impropriety, but I do not believe that without a full collateral review, we should be making assumptions regarding... Why doesn't chronic apply instead of Florida versus Nixon? Why doesn't chronic apply? Because... In other words, that we would dispense with the need for... It's so clear on the record that counsel was so deficient and so prejudiced his own client that we should be able to make that decision without collateral review. Because I don't believe it's that clear, your honor. I think there are a lot of assumptions that have to be made in this case in order to do that. And that Bell versus Cohn, the we should not be making those assumptions. And I do not believe the record is this clear. It's a lot of Monday morning quarterbacking going on. Isn't this case very much like chronic? I don't believe so, your honor. I think we have an individual here who may have been suffering from some delusions and none of us are aware of just how deep that went. Are you referring to the client or the attorney? I'm referring to Mr. Vanderpool, your honor. We don't know. And I would be... I think it would be a terrible mistake to make that decision without a full collateral review. And that's why it is such a narrow exception that that happens. Is there a sufficient difference in the text of the statute involved in Lampley versus the statute here that we shouldn't give any credence to the notion that Lampley may have influenced any decision making here? I don't believe the difference is substantial, your honor. An intent to harass versus an intent to threaten does not appear to be a great difference in my view. The appellant put forth an argument about someone violating the statute without even making the phone call, but there has to be an intent to harass or alarm versus an intent to inform someone. And I believe there's a big difference there and that saves the statute from being unconstitutionally overbroad or vague. I also argued that the statute forbids a specific act as opposed to speech. You don't even have to read the faxes in this case or know what the telephone conversations were to know that there was harassment involved. And that's what the trial court judge found. How about the sufficiency of the evidence here? We have four counts, including two days, I believe. Telephone and fax on two different days. And that really is what, it's not a conspiracy where you look at everything. You look at those two days. What is there in the record that supports an intent to harass on those days such that would be sufficient for the verdict? Well, Your Honor, there's case law that talks about looking at the facts and circumstances in order to prove intent to harass. And I think that's what happened in this case. They did not bring 24 counts of harassment for every single fax that was sent. But when you looked at the totality of the circumstances, the trial court judge found that there was, in fact, an intent to harass and that she was harassed. Well, the fact that she was harassed, that's not the issue. And she definitely felt harassed. But she had brought him Thanksgiving dinner. She had called the same day to inquire about his health. She had done these things. And you're finding intent to harass when she herself has invited this? Is that really fair? I believe so, Your Honor. I believe that the harassment began after that. It was mostly the month of December through the beginning of January. And keep in mind, she had gone to the police. The police officer got on the phone with Mr. Vanderpool and told him he needed to stop contacting her. So he was told by Ms. Webster, he was told by her mother, and he was told by a police officer. He was told to stop. But that doesn't mean that from an emotional standpoint, he could just tuck it away and say, I really, you know, this feeling I have for her and this desire that I have to get her back. You know, he said, I'll do everything in my power legally. So he certainly didn't intend to break the law, did he? I believe that we may have been dealing with someone who was delusional at the time. Once again, I think the record is not as clear as it could be what we were dealing with. But that's why we look at the facts in the light most favorable to the people. And we don't weigh the credibility of the witnesses at this point. This all took place back in 2005, I believe. So we have to trust that the trial court judge did her job. Can I take you back to counsel for a moment? I have this case here, U.S. v. Swanson. You're familiar with the Ninth Circuit case, where the Ninth Circuit applied chronic after an attorney told the jury that his client was probably guilty. Isn't this case very much like Swanson? Not necessarily, Your Honor. I feel like I keep saying the same thing over and over again. I apologize. But we don't know what kind of a client the attorney was dealing with. We don't know. There was no inflection, obviously, when you're reading the record. We don't know what kind of prep took place with his client. It's entirely possible that he had several conversations with his client prior to the trial. We don't know what the phone records would have shown that he didn't have. There's a lot of assumptions that would be true. It does appear from the record that they were at odds. In other words, Vanderpool wanted to present a defense, and his lawyer was not necessarily allowing him or participating in the presentation of a defense. We just don't know why. Do we have to know why? I believe so. I believe that's why there's such a narrow exception for direct review. Is a case like this always subject to a collateral review, or can there be such a case that the lawyer is so bad that from the record itself you could say that the defendant is deprived of the effectiveness of counsel? Clearly there is, Your Honor. The U.S. Supreme Court has found that there is such a case. I just don't believe this is one of those. Let me ask you if, let's assume for a second that we find 706 to be unconstitutional. Why should the plain error standard tie our hands in acting? Because the judge was not under any requirement to sua sponte raise the constitutionality of a statute that opposing counsel said has been around since 1968, I believe. This is a statute that imposes penalties. It's basically a criminal statute. Yes. It can't be sentenced to a term in jail. Yes, I believe so. In that context, can we say that we should, despite plain error review, we should take a look at it and determine whether it's constitutional? Well I believe, Your Honors, we'll take a look at it, but it is going to be a very strict standard under plain error review. Is it plain error to say that a person could be sentenced to prison if that statute is upheld? I do not believe so, Your Honor. No. I believe that it's a misdemeanor, shall be fined not more than $500, or imprisoned for not more than one year, and in this particular case, I believe Mr. Vanderpool's six-month sentence was suspended, so he didn't serve any time. Well, still, he was convicted. He was, in fact, convicted, yes, Your Honor. He was. And that's why we're here today. If there's nothing further, then... Judge Greenaway, anything further? No, I'm good. Thank you. All right. Thank you. Thank you. Well, yeah, let me ask you, though, going back to the constitutionality of the statute, there is a phrase that is apparently the one that's causing some concern here, which is a telephone call that alarms. Is that correct? Let me go back to the statute and look at the phrase precisely. Making a communication in a manner that is likely to harass or alarm. Yes, Your Honor. Now, you shouldn't make a telephone call and harass people and things like that, but to me, would you agree that that's the soft spot of the statute? In other words, what  No, Your Honor, there is a soft spot to the statute, but... Well, you don't believe there's any soft spot. Alarm, it really is from the standpoint of the listener, isn't it? In other words, somebody could be alarmed over a communication and say, I'm alarmed, and somebody could say, no, that's not alarming at all. Yes, Your Honor, but this statute has a mens rea requirement. There has to be an intent to alarm, and that is what I believe saves the statute from unconstitutionality. I could intend to alarm somebody. I could say, I just read in the New York Times today that global warming is raising the level of the oceans, and I could put together a flyer to say that global warming is raising the oceans, and that means that St. Thomas is going to be underwater in the next 20 years, and mail that to a bunch of people, and my purpose is, you know what, it's to alarm. But I'm from an environmental group, and I have this awareness. But under your view, you see, I could be prosecuted. There are cases that discuss that exact issue, Your Honor, and they found a difference between an intent to inform versus an intent to alarm. My intent was to alarm. I wanted to scare people into doing something because of global warming. With information about the future, not alarm in the sense of potential physical harm or threatening in that way. There's no personal threat imminent, anyway. Well, that saves it from overbreath, but it doesn't save it from vagueness, does it? Well, Your Honor, these words are very common. They are used... Isn't that what Lampley, isn't that what we said? In Lampley? Yes. That the statute was not vague. Was it vagueness or overbreath? That's what I'm trying to remember. I thought it was... Well... So it negates overbreath. Yes. Okay. That's right. But the vagueness is still a problem even with the intent, is it not? The U.S. Supreme Court in Screws v. The United States discussed words being commonly employed in ordinary conversation. Their unambiguous terms, plus the specific intent requirement I mentioned earlier, all foiled the appellant's vagueness argument. And I believe that applies here. These terms are very generally accepted. To harass means to disturb persistently, to bother continually. Alarm is to distress, to cause upset, worry, panic. I don't believe that they are vague. I don't know why the Speaker's motivation is relevant to the question of constitutional protection. That was Justice Roberts saying with regard to a First Amendment issue in FEC v. Wisconsin right of life. What does motivation have to do with the question of constitutional protection of speech? I would like to be constitutionally protected if I make a statement that's to raise public awareness over a particular issue. The intent element, I believe, Your Honor, is what keeps it from being overbrought. And that no one can violate the statute by mistake because they have to intend to harass or alarm. Your environmentalists... No, I've said before, I'm intending to alarm. That's what I want to do. And politicians do that, you know, when they send pictures out involving the right to life and things like that. And they send these gory pictures out. They want to alarm, but they're also constitutionally protected in doing that. Because I think there is a dual purpose. They are also intending to inform. And the second portion of the statute talks about with no purpose of legitimate communication. And your environmental example has a legitimate purpose of communication as opposed to harassing telephone calls and faxes. All right. Thank you. Rebuttal, Mr. Waldron. Thank you, Your Honors. I'd like to quickly discuss why appellant respectfully submits that the court must rule on the constitutional question here. Very quickly, at least one of the constitutional issues. And the Supreme Court of the United States even acknowledges that an appeal court may, in its discretion, resolve a pure issue of law for the first time appeal on appeal. What case law, in what case has a court held that it was plain error for a district court not to find a statute unconstitutional? Well, I don't have one at my disposal, Your Honor. But again, I would refer back to the case is so sweeping that it requires the judge in this case to take a step back and before imposing a sentence to look at what the statute was. And opposing counsel referred to the second, Mr. Vandepoole wasn't charged under Section 2. That refers to, that requires the making of a call. It also requires that the communication have no legitimate purpose. In this case, we're really dealing with Section 1 with a statute that is, applies to any written communication made with the intent to alarm, in a manner likely to alarm. So we're talking about political leaflets, any sort of billboard, books, satanic verses, things that have been, that have, are of course constitutionally protected, but would fall under the scope of the statute. Again, there's no requirement under the statute that communication be made directly. So it seems that a newspaper publisher could potentially be held criminally liable under the statute. There's really just no, it's a standardless statute that really could, that really sweeps so broadly that, again, I would urge this court to find that the lower court should have, I think, contemplated the sweep before imposing. You started out by saying that apart from, apart from plain error, we have the, the right, we have the authority to address the constitutionality of the statute. I've said that the Tenth Circuit has, has ruled in that. And what was their, what was that court's basis? That was in the Ciappone case. I actually... And that was having to do with declaring a statute unconstitutional? Again, it was reviewing. I don't have the, the exact circumstances in that case in front of me. I had just, I pulled that from... I'm just trying to figure out how do you cite that plain error? Not that I wouldn't want to, but I, you know, it just hits you right, you know, right in the face. You have to deal with it. Right. And again, I would, I would, I would, I guess, keep, keep emphasizing that the, the standardlessness of the statute, and I, perhaps you look at the statute and you, you compare it to 706-2, which does include some of the standards that are included in, in statutes like the federal statutes that have, that have been upheld. A point that I was making earlier is that the statute perhaps is, is simply outdated. It's talking about telegrams. The only messages people are typing, tapping out these days are, are texts in large volumes. And I think communications perhaps in 1968 were made with, with much more deliberation than... So, first, let, let me just make sure I understand. You have no cases in which a court applying plain error has ruled in the way that you suggest, correct? That's correct, Your Honor. Okay. And when we look at United States versus Alano, right, that can, the Supreme Court said, Court of Appeals cannot correct an error pursuant to Rule 52B unless the error is clear under current law. So, this is not a situation where it's clear under current law and when we have the further application of having to apply plain error, there's really no way that we can get to where you want us to go. Is there? Well, Your Honor, I would, again, I would refer to the decisions of, of the other state Supreme Courts that have, that have considered the language at issue here. The, again, the, the briefing sets out a number of, of cases that highlight the statutes in other states that the language very, was, was substantially similar to the language of the VI statute and in each case the court struck the language down. I, I think that would be my, my response. Again, I, I think the, the court should feel compelled to, to, to, to review or to, to invalidate the statute here, just, just based on the amount of, of speech that the statute chills. And, and I was, I was arguing that earlier, just that, just anything, any sort of publication, book, I was thinking earlier that the Declaration of Independence, which was intended to alarm the British, that would fall under, that would be criminally, criminally liable, the drafters under this. And it's... The founding fathers were criminally liable. They were. Perhaps not the best, perhaps not the best, best example, but I, I, I wanted to just show how the statute sweeps so broadly. And I do see my time is up. Just to conclude, the errors that, that appellant presents in this case, I believe each of them, or at least the sufficiency of the argument, error and the failure to raise the constitutionality, those were plain. I think this court should, should be compelled to, to exercise its discretion and, and vacate Mr. Van, Van Der Poel's conviction on those bases. And as an alternate basis to vacate the conviction, chronic, if chronic doesn't apply here, I don't know when, when chronic would ever apply. I feel like this, this case lies on the outside of U.S. v. Swanson. And it's a case, again, where I believe that this court would be well within its right to, to find that, that, that counsel just meaningfully, failed to meaningfully contest the government's case and abdicated its role. And for that reason as well, Mr. Van Der Poel's conviction should be vacated. All right. Thank you, counsel. Thank you. This is well argued. We'll take it under advisement. We're going to take a five-minute